UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| JAMES EDWARD GEORGE, JR., <br><br> Plaintiff, <br><br> v. <br><br> JOHN RECTOR, *et al.*, <br><br> Defendants. | No. 5:17-CV-13-JMH-HAI <br><br> REPORT & RECOMMENDATION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff James Edward George, Jr., is a state prisoner currently housed at the Eastern Kentucky Correctional Complex. D.E. 23. In December 2016, he filed a *pro se* prisoner civil rights lawsuit under 42 U.S.C. § 1983 in case number 5:16-CV-482-KKC. In January 2017, Chief Judge Caldwell, having conducted a preliminary review, severed certain claims and dismissed others with prejudice. *George v. Ballard*, No. 5:16-CV-482-KKC, D.E. 6. A handful of the severed claims became this case, which was assigned to District Judge Hood.[1] The issues now under consideration include Plaintiff's claims for damages against defendants John Rector, Michael Long, Scott Gordon, Phillip Andrews, Stephen Boles, Chris Toelke, Christopher Goode, Landon Leishner, and Julie Thomas "related to strip searches, pat down searches, disciplinary reports arising from such searches, and the restriction of [Plaintiff's] visitation privileges." *Id*.

On February 1, 2017, the Court received Plaintiff's Amended Complaint, accompanied by hundreds of pages of exhibits. D.E. 10. The Amended Complaint contains very little factual

---

[1] Plaintiff's claims against Defendant Dave Edwards, a maintenance supervisor, were later dismissed upon initial review for failure to state a claim upon which relief could be granted. *George v. Edwards*, No. 5:17-CV-12-DCR, D.E. 11.

development, but Plaintiff's grievances that are filed in the record add some factual flesh to the bones of his claims. *See* D.E. 10-2, 10-3. On April 7, 2017, Judge Hood referred the matter to the undersigned for a recommendation on any dispositive motions. D.E. 20. The claims at issue in this action are found on pages 16 to 21 of the Amended Complaint (D.E. 10) and the one-page accompanying "Statement" (D.E. 10-1).

On October 16, 2017, Defendants moved for summary judgment, and attached numerous affidavits and other exhibits. D.E. 38. Defendants characterize this action as part of a "systematic scheme to harass the Defendants." D.E. 38-1 at 2. Plaintiff has responded. D.E. 41. On December 19, 2017, Defendants replied. D.E. 42. With no material issues of fact being disputed, the undersigned recommends granting summary judgment in favor of Defendants.

## I. Legal Standards—Summary Judgment

Defendants have moved for summary judgment under Rule 56 and rely upon documents and declarations extrinsic to the pleadings. Fed. R. Civ. P. 12(d). A motion under Rule 56 challenges the viability of the other party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that he is entitled to a judgment as a matter of law, he is entitled to summary judgment. *Kand Med., Inc. v. Freund Med. Prods., Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need his own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and discovery which demonstrates

that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). "A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts." *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

The Court reviews all of the evidence presented by the parties in a light most favorable to the responding party and draws all reasonable factual inferences in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## II. Background

The claims in this case are based on a series of strip searches, a series of disciplinary write-ups, a patdown search, a phone conversation, and an erroneous visitation restriction—each of which occurred while Plaintiff was housed at Northpoint Training Center. D.E. 1; *see also George v. Ballard*, No. 5:16-CV-482-KKC, D.E. 6 (identifying the claims that were transferred into this action).

### A. Strip Searches

The facts concerning the three strip searches are very similar. The searches occurred on June 26, July 2, and December 3, 2016. Plaintiff alleges that the June 26 and December 3 searches violated his "4th Amendment right to privacy" and his "8th Amendment right to be free from sexual harassment." D.E. 10 at 16; D.E. 10-1. He alleges the July 2 search violated his "8th Amendment right to be free from sexual harassment." *Id*. at 17.

Each search followed a contact visit. D.E. 10 at 16-17. For each search, Plaintiff was taken to the dressing room and asked to bend over for a visual inspection of his anal opening. *Id*.

3

Each time, he initially objected, but eventually complied. Plaintiff does not allege that he was touched during any of these searches. D.E. 41 at 13, 27. Instead, he argues that the searches were inappropriate and did not comply with institutional policies. *Id*. at 1-8. According to Plaintiff, a visual inspection of the anus may be conducted only when accompanied by reasonable suspicion. *Id*. at 5-8. Plaintiff filed a grievance following each of the strip searches, and his grievances were denied on the basis that officers acted within policy guidelines. *See* D.E. 38-1 at 3-5.

Plaintiff relies on two documents concerning strip-search policies, but he misinterprets both. Kentucky Corrections Policies and Procedures ("KCPP"), policy number 9.8, contains the following relevant definitions. First, "'Body cavity search' means a manual or instrument inspection of a person's anal, vaginal or other body cavity by a trained medical professional." D.E. 38-17 at 1. Second, "'Strip search' means a body search during which a person is required to remove his clothing, and during which a person is subject to visual inspection of the genital and anal area, as well as other body cavities." *Id*. To be clear, Plaintiff is not currently alleging that he was subject to a body cavity search. D.E. 41 at 13, 27. The parties agree that the three relevant searches were "strip" searches. And, according to the policy manual's definition, "strip" searches include "visual inspection" of Plaintiff's "anal area." D.E. 38-17 at 1.

KCPP 9.8, part II, contains the following policy regarding strip searches:

    c.    All inmates shall be subject to a strip search if

        (1)    Entering or exiting an institution,

        (2)    Entering or exiting the visiting area, or

        (3)    Entering or exiting a controlled area, the Prison Industries area, boiler room area, or other area to which inmate access is limited.

    d.      Inmates[] who do not fall into one of the strip search categories above, may be strip searched if reasonable suspicion exists that the inmate is carrying contraband.

D.E. 38-17 at 2.

    Under a plain reading of KCPP 9.8, the challenged strip searches complied with departmental policy. At each occasion, Plaintiff was "exiting the visiting area." According to the policy, "[a]ll inmates" who are "exiting the visiting area" "shall be subject to a strip search." *Id*. On each occasion, Plaintiff was thus "subject to a strip search." And, by definition, during a "strip search," the prisoner "is subject to visual inspection of the genital and anal area, as well as other body cavities." *Id*. at 1.

    Plaintiff argues, based on subsection II.d, above, that strip searches should only be done "if reasonable suspicion exists that the inmate is carrying contraband." D.E. 41 at 4-8. He denies that reasonable suspicion existed. *Id*. But here, Plaintiff erroneously transposes language from subsection II.d and applies it to subsection II.c. By its language, II.d applies only to prisoners "who do not fall into one of the strip search categories [of subsection II.c]," which subsection includes prisoners exiting the visiting area. To be clear, because Plaintiff was "exiting the visiting area" during each of the three searches, he was "subject to a strip search," which included visual inspection of his "anal area." Nothing in the record suggests that corrections officers conducted the three strip searches in violation of departmental policy.

    The second relevant policy document is Northpoint Training Center's Inmate Handbook, filed at Docket Entry 38-18. The language in this document related to strip searches is very similar:

    B.      All inmates shall be subject to a strip search, including a visual inspection of anal or other cavities if:

          1.      Entering or exiting the institution;

5

>   2. Entering or exiting the Visiting Room; or
>
>   3. Entering or exiting a controlled area where access by inmates shall be limited.
>
> C. Inmates who do not fall into one (1) of the categories in Section B may be strip searched if there is a reasonable suspicion the inmate being strip searched is carrying contraband. However, the anal cavity shall not be visually inspected unless there is reasonable suspicion contraband is being carried in the anal cavity.

D.E. 38-18 at 2.

Again, Plaintiff's strained interpretation notwithstanding, nothing in the record suggests the challenged searches were performed contrary to the terms of the Inmate Handbook. On each occasion, Plaintiff was "exiting the Visiting Room," which means he was "subject to a strip search, including a visual inspection of anal or other cavities." D.E. 38-18 at 2. Plaintiff points to the "reasonable suspicion" aspects of section C. D.E. 41 at 8. But, again, this section only applies to prisoners who are not covered by section B, which includes prisoners, like Plaintiff, who were leaving the visiting room. D.E. 38-18 at 2.

Accordingly, the remainder of this recommendation will rely on the Court's finding that the strip searches were performed in accordance with departmental policy. It is unsurprising that, after Plaintiff filed grievances concerning each strip search, each grievance ended in a finding that the searches conformed to policy. *See* D.E. 38-1 at 3-7. And again, Plaintiff does not now allege that the searches included a "body cavity" search or that officers touched him during the searches. D.E. 41 at 13, 27.

### B. Disciplinary Reports

After each of the challenged strip searches, Plaintiff filed a grievance and an officer filed a disciplinary report based on Plaintiff's initial refusal to bend over for a visual anal inspection. These disciplinary reports, alleging a refusal to submit to a search, were filed on July 1 (after the

June 26 search), July 3 (after the July 2 search), and December 4 (after the December 3 search). *See* D.E. 10 at 18-19; D.E. 10-1; D.E. 38-1 at 4, 6. In this action, Plaintiff argues that the three reports violated his "1st Amendment right to freedom of protected speech." D.E. 10 at 18; D.E. 10-1. Specifically, he alleges that each disciplinary report was filed in retaliation for protected activity, *i.e.*, his decision to file a grievance complaining of each search. D.E. 10 at 18-19; D.E. 10-1.

Plaintiff was found guilty of the July 1 report, but the report and penalty were later dismissed. D.E. 38-5, D.E. 38-1 at 4. Regarding the July 3 report, Plaintiff was found guilty of the amended charge of interfering with an employee in the performance of his duties. D.E. 38-7; D.E. 38-1 at 4-5. Regarding the December 4 report, Plaintiff was found guilty. D.E. 38-15; D.E. 38-1 at 6-7.

Plaintiff also alleges his First Amendment rights were violated by the filing of disciplinary reports after he lodged complaints under the Prison Rape Elimination Act ("PREA") that were found to be unfounded. First, on June 28, 2016, Plaintiff called the PREA hotline to lodge a complaint concerning the June 26 strip search. D.E. 38-4. A subsequent investigation concluded his sexual abuse claim was "unfounded." *Id*. at 5. Based on the outcome of this investigation, on July 18, an officer filed a disciplinary report against Plaintiff for knowingly filing a false PREA allegation. D.E. 38-9; D.E. 38-1 at 5. Plaintiff was found guilty. D.E. 38-9 at 3.

Second, on July 5, 2016, Plaintiff called the PREA hotline to lodge a complaint concerning the July 2 strip search. Again, a subsequent investigation concluded his sexual abuse claim was "unfounded." D.E. 38-4; D.E. 38-1 at 3-4. Based on the outcome of this investigation, on August 23, an officer filed a disciplinary report against Plaintiff for knowingly

7

filing a false PREA allegation. D.E. 38-13; D.E. 38-1 at 6. Plaintiff was found guilty. D.E. 38-13 at 3.

Plaintiff alleges that these two disciplinary reports were filed in retaliation for his valid PREA complaints, in violation of the First Amendment. D.E. 10 at 18, 21.

In Part V.A below, the Court will consider these five disciplinary reports—three based on Plaintiff's initial refusal to submit to the visual anal inspection, and two based on his lodging of PREA complaints that were determined to be unfounded.

### C. The Pat-Down

Plaintiff alleges that, on August 13, 2016, an officer violated his Eighth Amendment right "to be free of sexual abuse" when the officer "rubbed his hands over plaintiff's penis and buttocks during a pat down search in the dining facility." D.E. 10 at 20. Plaintiff filed a grievance regarding this pat-down and called the PREA hotline. D.E. 38-1 at 5-6. Upon review of the grievance, the pat-down was "found to be within policy guidelines" and that Plaintiff was "not touched in a sexual manner by the officer." D.E. 38-11 at 5. The PREA investigation likewise concluded that the allegation was "false" and "unfounded." D.E. 38-12 at 7. A video recording was consulted in conducting both reviews. D.E. 38-11 at 5; D.E. 38-12 at 7. Plaintiff was unable to obtain the video through discovery because, according to Defendants, it was not archived. D.E. 41 at 21, 29. Plaintiff was also subject to a disciplinary report for filing a false PREA complaint, and was found guilty. D.E. 38-13.

### D. Claims against Deputy Warden Thomas

The Amended Complaint contains two allegations concerning Deputy Warden Julie Thomas. D.E. 10 at 16. First, Plaintiff alleges that Thomas "threatened retaliatory action for Plaintiff using the grievance process." *Id*. According to the facts alleged in his grievance,

8

during a June 9, 2016 telephone conversation, Thomas told him that a grievance of his (not related to this case) was "ridiculous" and would be dismissed. D.E. 38-2, D.E. 38-1 at 3. She allegedly told him he "needed to grow up" and that he was "done" if he filed another failed grievance. *Id*.

Second, Plaintiff argues that, on June 27, 2016, he was arbitrarily placed on visitation restriction in retaliation for filing grievances. D.E. 10 at 16. Defendants explain that the visitation restriction was imposed by mistake and was quickly withdrawn:

> On July 27, 2016, [Deputy Warden Julie] Thomas sent a letter to George informing him that due to his being found guilty of a Category 4 - 4 Interfering with the taking of a drug test on July 26th (stemming from a disciplinary write-up unrelated to this case), he was being placed on non-contact visits for a period of six months. Correspondence between DW Thomas and George, attached hereto as Exhibit 9, p. 1. George responded by letter dated August 23rd, that the disciplinary category he was found guilty of did not subject him to six months of non-contact visitation, but rather that penalty was applicable to category 4 – 2 Unauthorized use of drugs or intoxicants. *Id*., p. 2. DW Thomas responded by letter the following day and notifying George that his visitation privileges were reinstated. *Id*., p. 3.

D.E. 38-1 at 5.

Plaintiff claims these two actions violated his First Amendment "right to freedom of protected speech" and his Eighth Amendment right "to be free from harassment and retaliation." D.E. 10 at 16.

Plaintiff, in his response, makes no mention of these claims against Thomas. D.E. 41. The Court considers them abandoned and therefore subject to dismissal. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 369 (6th Cir. 2013).

Even if it were not abandoned, and assuming that Plaintiff's factual allegations are true, Plaintiff's claim regarding the visitation restriction is unexhausted. The Prison Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions

9

under 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e.; *see also Booth v. Churner*, 532 U.S. 731, 741 (2001). The exhaustion requirement applies to all lawsuits by inmates regarding prison life "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). And proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The prison grievance system must be "given a fair opportunity to consider the grievance," which requires the prisoner to comply "with the system's critical procedural rules." *Id*. at 95.

Here, there is no evidence that Plaintiff pursued a grievance on this issue or that prison officials prevented him from doing so. This claim is not administratively exhausted, and thus the Court cannot entertain it. On account of abandonment and lack of exhaustion, Defendants are entitled to summary judgment on the visitation-restriction claim.

### III. Eighth Amendment Claims

Plaintiff alleges that the June 26, July 2, and December 3 strip searches and the August 13 pat-down violated his rights under Eighth Amendment. He cites his right to be "free from sexual harassment" and "free of sexual abuse." D.E. 10 at 16, 17, 20. Presumably, he relies on the Eighth Amendment's cruel and unusual punishment clause. Plaintiff filed grievances after all four incidents, each of which was denied. *See* D.E. 38-1 at 3-6. He was also found guilty of a disciplinary infraction related to each strip search and guilty of filing a false PREA complaint concerning the pat down. *See id*. at 4-7.

"The unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingramham v. Wright*, 430 U.S. 651, 670 (1977)).  When prison officials are accused of using excessive physical force in violation of the Eighth Amendment, the measuring standard is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6.  Therefore, the inquiry in cases where prisoners allege the use of excessive force is whether the force was applied "maliciously for the purpose of causing harm."  *Haynes v. Marshall*, 887 F.2d 700, 703 (6th Cir. 1989).

"Prison administrators…should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22 (citation omitted)).

Accordingly, in making the determination of whether the use of force was wanton or unnecessary, the court must balance several factors.  *Whitley*, 475 U.S. at 321.  These factors include:  the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of a forceful response.  *Id*.  No actual injury needs to be proven to state a viable claim under the Eighth Amendment.  *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  Instead, medical evidence and the extent of plaintiff's injuries should be evaluated with all the other evidence in determining whether malicious or sadistic force was used.  *Reist v. Orr*, 67 F.3d 300 (6th Cir. 1995).

The Eighth Amendment's prohibition against cruel and unusual punishments "necessarily excludes . . . *de minimis* uses of physical force, provided that the use of force is not of a sort

11

'repugnant to the conscience of mankind.'" *Id*. at 327 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *4 (6th Cir. Mar. 31, 2017) (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)).

What this means is that Plaintiff's claims, as described in the Amended Complaint, fail as a matter of law. "[H]arassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (citing *Ivey*, 832 F.2d at 954). On one hand, "Sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Hursey*, 2017 WL 3528206, at *4 (quoting *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005)). More specifically, "severe or repetitive sexual abuse of an inmate" by an officer can be sufficiently serious to violate the Eighth Amendment. *Jackson*, 158 F. App'x at 662 (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)). On the other hand, "isolated episodes of harassment and touching," though "despicable," do not generally rise to the level of a constitutional violation. *Boddie*, 105 F.3d at 861.

As in the cases just cited, the episodes at issue in this case were "isolated, brief, and not severe," and thus fail to invoke the Eighth Amendment. *Hursey*, 2017 WL 3528206, at *4 (quoting *Jackson*, 158 F. App'x at 662). Regarding the strip searches, Plaintiff alleges he was subject to "arbitrary visual inspection of the anal cavity after visitation." D.E. 10 at 16, 17. Regarding the pat down, Plaintiff alleges an officer "rubbed his hands over Plaintiff's penis and buttocks during a pat down search." *Id*. at 20. Plaintiff does not allege that he was singled out for a pat-down. *See* D.E. 41 at 19-21. Even disregarding the fact that the Corrections

Department found that the searches and the pat down were consistent with departmental policy, Plaintiff's allegations are comparable to those in *Boddie*, *Hursey*, and *Jackson*, which were found not to be constitutional violations.  Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

### IV.  Fourth Amendment Claim

Regarding the June 26, 2016 strip search, Plaintiff alleges that the "visual inspection of the anal cavity" violated his Fourth Amendment "right to privacy."  D.E. 10 at 16-17.  Not so.

The Supreme Court has previously determined that inmates' Fourth Amendment rights are not violated in situations identical to Plaintiff's.  In *Bell v. Wolfish*, the Court considered a situation in which, "[a]fter every contact visit with someone from outside the facility . . . an inmate must remove all of his or her clothing, bend over, spread the buttocks, and display the anal cavity for inspection by a correctional officer."  *Bell v. Wolfish*, 441 U.S. 520, 577 (1979) (Marshall, J., dissenting).  The Court held that such automatic and routine "visual body-cavity inspections" can be conducted "on less than probable cause."  *Id*. at 560.  This was so because the "significant and legitimate security interests of the institution" outweighed "the privacy interests of the inmates" when it comes to searches for contraband following a contact visit.  *Id*.  Thus, "routine visual body cavity searches after contact visits do not violate the Fourth Amendment."  *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 574 (6th Cir. 2013).[2]  Plaintiff's key argument is that the searches violated departmental policy.  D.E. 41 at 1-8.  But even if he was correct on this point, it would be irrelevant under *Bell v. Wolfish*—routine post-visitation strip searches do not violate the Fourth Amendment.  Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claim.

---

[2] Plaintiff argues (without citing any authority) that "the Sixth Circuit Court of Appeals has defined a strip search as [an] inspection of a naked individual without any scrutiny of body cavities."  D.E. 41 at 8.  This argument does not jibe with *Stoudemire* and other cases that follow *Bell v. Wolfish*.

13

## V. First Amendment Retaliation Claims

### A. Disciplinary Reports

To review, Plaintiff alleges that five disciplinary reports were lodged against him in retaliation for "protected speech." "[R]etaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish a First Amendment claim, a prisoner must prove that "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X*, 175 F.3d at 394, 398). Protected conduct includes a prisoner's absolute "'First Amendment right to file grievances against prison officials on his own behalf.'" *Hill*, 630 F.3d at 472 (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). However, the filing of frivolous grievances is not protected conduct. *Herron*, 203 F.3d at 415. "[A grievance is] protected conduct only to the extent that the underlying claims had merit." *Id*.

Furthermore, to support a First Amendment retaliation claim, "some evidence of retaliatory motive is required, and conclusory allegations of retaliatory motive unsupported by material fact are insufficient to state a claim." *Parks v. Anderson*, No. CIV 6:10-355-GFVT, 2014 WL 4854570, at *32 (E.D. Ky. Sept. 29, 2014) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)). "[Although] temporal proximity between filing grievances and the adverse action may provide some support for establishing retaliatory motive, the Sixth Circuit has been reluctant to find that such evidence alone establishes retaliatory motive." *Id*. (citing *Skinner v. Bolden,* 89 F. App'x 579, 580 (6th Cir. 2004)).

Three of the five challenged reports charge Plaintiff with initially failing to submit to visual inspection of the anus—the incidents in June, July, and December 2016 that were previously discussed. D.E. 10 at 18-19; D.E. 10-1. Two reports charge him with filing false PREA complaints. One of these, filed July 18, 2016, is based on the PREA complaint Plaintiff lodged related to the July 2 strip search. D.E. 10 at 18; D.E. 38-1 at 5. The other report, filed August 23, 2016, is based on the PREA complaint Plaintiff lodged related to the August 13 pat down search. D.E. 10 at 21; D.E. 38-1 at 6.

Plaintiff's First Amendment claims related to the disciplinary report fail on two grounds. First, his underlying grievances and PREA complaints were frivolous. Concerning the strip searches, as previously explained, courts have upheld the use of routine strip searches following contact visits in prisons. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 573-74 (6th Cir. 2013). The pat down search was similarly routine, and the alleged facts are far from the sort that would uphold a finding of inappropriate officer behavior. *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *4 (6th Cir. Mar. 31, 2017).

It bears noting that, upon review, Plaintiff's grievances and PREA complaints regarding the searches and pat down were found to be meritless. *See* D.E. 38-1 at 3-6. Further, concerning the strip searches, Plaintiff was found guilty of the disciplinary reports charging him for his initial failure to cooperate. *See* D.E. 38-1 at 3-6. "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). These findings of guilt provide another basis for granting summary judgment related to

15

the strip searches. And, Plaintiff was found guilty of filing a false PREA complaint concerning the pat down.

Because Plaintiff's grievances and PREA complaints were frivolous, they were not protected activity. Defendants are entitled to summary judgment on all five disciplinary-report claims.

Alternatively, Plaintiff has failed to establish that Defendants acted with a retaliatory motive. Merely alleging that the disciplinary reports are retaliatory (*see* D.E. 10 at 18-19, 21; D.E. 10-1) or part of a "sinister game" (D.E. 10 at 17, 19) is insufficient. *Harbin-Bey*, 420 F.3d at 580. "[C]onclusory allegations of retaliatory motive unsupported by material fact are insufficient to state a claim." *Parks*, 2014 WL 4854570, at *32.

Plaintiff argues that the fact that an officer mischaracterized his strip search as a body cavity search provides evidence of retaliatory motive. D.E. 41 at 14-15. But this simply does not logically follow. Plaintiff also recounts conversations surrounding the December strip search in his unsworn reply brief. *Id*. at 16-19. But, accepting his account as true, Plaintiff's allegations fail to establish a retaliatory motive. Plaintiff acknowledges that he did not immediately submit to a visual anal inspection when ordered to do so. *Id*. His admitted noncompliance undermines his allegations of a retaliatory motive. Accordingly, a lack of factual support for a retaliatory motive provides an alternative basis for granting summary judgment for Defendants on all five disciplinary-report claims.

### B.  Deputy Warden Thomas's Phone Call

Plaintiff alleges that the contents of a phone call violated his rights under the First and Eighth Amendments. D.E. 10 at 16. According to his related grievance, during a June 9, 2016 phone call, Thomas

16

>   explained that [a grievance otherwise unrelated to this case] was being rejected,
>   however she was tasked to look into the situation. She went on to tell me that my
>   grievance was ridiculous and that I need to grow up. Julie Thomas went on to
>   state the next time that I file a grievance that becomes rejected that "I was done."

D.E. 38-2. Thomas offers a different account of this conversation in her affidavit. D.E. 38-16 at 2. Nevertheless, accepting Plaintiff's version as true, his claim fails.

As previously noted, Plaintiff made no mention of this claim in his response to the motion for summary judgment. D.E. 41. The Court considers the claim abandoned. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 369 (6th Cir. 2013). Even if it was not abandoned, it would fail on the merits.

Regarding the Eighth Amendment aspect of the claim, the Court has already noted that "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (citing *Ivey*, 832 F.2d at 954). Even assuming the described conversation could be construed as harassing or verbally abusive, such behavior does not rise to the level of cruel and unusual punishment. Defendants are entitled to summary judgment on the merits of this Eighth Amendment Claim.

Regarding the First Amendment aspect of the claim, it fails the *Thaddeus-X* standard. To establish a First Amendment claim, a prisoner must prove that "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999)).

First, the claim fails because the filing of a frivolous grievance is not protected conduct. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). "[A grievance is] protected conduct only

17

to the extent that the underlying claims had merit." *Id*. Plaintiff's June 9, 2016 grievance concerning this matter was rejected because he was "on grievance limitation" for filing too many grievances. D.E. 38-2 at 1, 7. Plaintiff appealed, and the resulting review found a lack of "evidence to support [Plaintiff's] allegations on this matter." *Id*. at 9. Plaintiff puts forward no argument regarding why his underlying grievance was not frivolous. Having no "protected conduct" at issue, this claim fails the first element of the *Thaddeus-X* standard.

Second, the claim also fails the second element. As Defendants persuasively argue, Thomas's alleged statements are not the sort that would deter a person of ordinary firmness from exercising his right to file grievances. D.E. 38-1 at 9-10. In fact, the record establishes that Plaintiff continued to file multiple grievances after this incident, including a grievance complaining about the phone call itself. Thus, even if it were not abandoned, Defendants are entitled to summary judgment on this claim.

### VI. Conclusion

The undersigned **RECOMMENDS** that Defendants' motion for summary judgment (D.E. 38) be **GRANTED.** Having drawn all reasonable inferences in favor of Plaintiff, the nonmoving party, the Court finds no evidence that presents a sufficient disagreement to require submission to a jury. And the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). The undersigned further **RECOMMENDS** that this frivolous action count as a "strike" for purposes of 28 U.S.C. § 1915(g).

The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. Within fourteen days after being served with a copy

of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 1st day of February, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge